UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

Case Number: _____

WILHELMSEN SHIPS SERVICE PTY LTD.,
WILHELMSEN SHIPS SERVICE,
WILHELMSEN SHIP SERVICE LTD., and
WILHELMSEN SHIP SERVICE, INC.,

                               Plaintiffs,

-v-

YACHT PATH INTERNATIONAL, INC.,
UNITY SHIPPING LINES INC.,
KEVIN CUMMINGS a/k/a KEVIN DUMMINGS
and DENNIS J. CUMMINGS collectively d/b/a
YACHT PATH MARINE GROUP,

                               Defendants.

--------------------------------------------------------------------------/

## VERIFIED COMPLAINT

Plaintiffs, Wilhelmsen Ships Service Pty Ltd. ("WSS Australia"), Wilhelmsen Ships Service ("WSS Canada"), Wilhelmsen Ships Service Ltd. ("WSS Hong Kong") and Wilhelmsen Ships Service, Inc. ("WSS USA") (collectively "WSS Entities"), by and through their attorneys, hereby file this, their Verified Complaint and sue the Defendants, Yacht Path International, Inc. ("Yacht Path"), Unity Shipping Lines Inc. ("Unity"), Kevin Cummings a/k/a Kevin Dummings ("K. Cummings") and Dennis J. Cummings, Jr. ("D. Cummings") (both collectively "the Cummings Brothers") collectively doing business as Yacht Path Marine Group (all collectively "Defendants"), and allege upon information and belief as follows:

## JURISDICTION AND VENUE

1.     The Court has subject matter jurisdiction by virtue that the underlying claim herein is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and within the admiralty and maritime jurisdiction of this Court under 28 U.S.C. § 1333.

2.     The Court has jurisdiction over Defendants because Defendants transact business in the State of Florida and are domiciled in the State of Florida, all within this judicial district. In addition, this Court has diversity jurisdiction over this controversy, as the matter in controversy exceeds the sum or value of $75,000.00 and is between citizens of different states under 28 U.S.C. § 1332(a)(1).

3.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) and (c).

## THE PARTIES

4.     At all times material hereto, Plaintiff, WSS Australia, was and still is a foreign business entity with a principal place of business at Level 1/118 Darby Street, Cooks Hill, NSW Australia.

5.     At all times material hereto, Plaintiff, WSS Canada, was and still is a foreign business entity with a principal place of business at 8978 Fraserton Court, Burnaby, B.C. Canada V5J 5H8.

6.     At all times material hereto, Plaintiff, WSS Hong Kong, was and still is a foreign business entity with a principal place of business at Room 1807-1812, 18 Floor, Lu Plaza, 2 Wing Tip Street, Kwun Tong, Hong Kong.

7.     At all times material hereto, Plaintiff, WSS USA, was and still is a Washington State corporation with a principal place of business at 1721 13th Avenue SW, Seattle, Washington 98134.

8.     The Plaintiffs act on behalf of and represent ship owners/operators/charterers ("operator") in locations where the operator may not have an office or personnel (it is more efficient to use an agent rather than establish an office in every port) and are otherwise known as "Port Agents".

9.     Upon information and belief, at all times material hereto, Defendant, Yacht Path, was and still is a business entity incorporated under the laws of the State of Florida, with a principal place of business at 2860 W. State Road 84, Suite 118, Fort Lauderdale, Florida 33312.

10.    Upon information and belief, at all times material hereto, Defendant, Unity, was and still is a business entity incorporated under the laws of the State of Florida, with a principal place of business at 2860 W. State Road 84, Suite 118, Fort Lauderdale, Florida 33312.

11.    Upon information and belief, at all times material hereto, Defendant, K. Cummings, was and still is an individual residing in Palm Beach County and/or Broward County, Florida and an officer of a several Florida corporations; *to wit*: Unity, Unity Holdings Inc. and Yacht Path; and doing business personally as Yacht Path Marine Group.

12.    Upon information and belief, at all times material hereto, Defendant, D. Cummings, was and still is an individual residing in Palm Beach County and/or Broward County, Florida and an officer of several Florida corporations; *to wit*: Unity, Unity Holdings Inc., Unity Marine Inc., Yacht Path Palm Beach Inc., and Yacht Path; and doing business personally as Yacht Path Marine Group.

13.     Upon information and belief, K. Cummings and D. Cummings are related and operate and personally control Yacht Path, as principal proprietors and officers of Yacht Path.

14.     Yacht Path is the alter ego of K. Cummings and/or D. Cummings, who established Yacht Path as an instrumentality to perpetrate the shipping of yacht cargoes without payment to Port Agents, to avoid liabilities to those agents, including the WSS Entities. K. Cummings and/or D. Cummings have/has used Yacht Path to engage in improper conduct, personally participating in the provision of bank documents which were provided to the WSS Entities in an attempt to have the WSS Entities provide goods and services under the mistaken impression that Yacht Path had paid for such services.

15.     Upon information and belief, K. Cummings and D. Cummings are related and operate and personally control Unity, as principal proprietors and officers of Unity.

16.     Unity is the alter ego of K. Cummings and/or D. Cummings and established Unity as an instrumentality to further Yacht Path's attempt to avoid liabilities to the WSS Entities by issuing improper and/or pending wire transfer confirmations to innocent providers of services, including the WSS Entities, in an attempt to have the WSS Entities provide goods and services under the mistaken impression that they had been paid for such services.

17.     Upon information and belief, the Cummings Brothers are doing business as Yacht Path Marine Group.

18.     Upon information and belief, the Defendants are interrelated as far as sharing assets, sharing bank accounts and participating together in business.

19.     Upon information and belief, the Cummings Brothers have used the corporations to provide improper bank wire transfer confirmations to unwitting Port Agents to induce such Port Agents to provide services to their companies, as more fully described below.

4

20.     The Defendants successfully convinced the WSS Entities that they had been paid in advance for its goods and services, when in fact on several occasions, the Defendants had not paid for said goods and services as required by the contract between the parties, causing loss and damages to the Plaintiffs as described more fully herein.

FACTS

21.     On or about July 2011, the Defendants began nominating various WSS Entities to act as Port Agents for various ships around the world.

22.     The basis for the WSS Entities accepting appointment as the Defendants' Port Agents was for each call to be prefunded prior to the ship's arrival, so that the WSS Entities would have sufficient funding to arrange for the various items required, including, *inter alia*, pilotage services, launches, advance booking rental equipment, payment of buoy dues, and other such items and services that require prepayment. This is the agreement that the parties had entered into.

23.     However a point in time began where various WSS Entities were misled to believe by the Defendants that the calls were in fact prefunded, when in fact, they were not.

24.     The WSS Entities provided Port Agent services to the Defendants in good faith and under the continuing condition that each call was prefunded, when in fact, several were not.

***AUSTRALIA CALLS***

25.     On or about July 26, 2011, the ship BBC CALIFORNIA arrived at Newcastle, Australia to discharge, *inter alia*, three (3) yachts .

26.     Prior to the ship's arrival to Newcastle, the Defendants nominated WSS Australia to act as Port Agents for this ship's arrival at Newcastle.

27.     As a result of the Defendants' nomination, the Defendants incurred AUD 41,293.90[1] (or US $43,306.45) in agency costs.

28.     The Defendants advanced AUD 38,419.19 (or US $40,295.29) in agency costs to WSS Australia, leaving a net balance owed to WSS Australia in the amount of AUD 2,874.71 (or US $3,015.00). *A copy of WSS Australia's Final Disbursement Account for the BBC CALIFORNIA call and supporting documents is attached hereto as Pl.s' Ex. "1".*

29.     On or about October 5, 2011, the ship HR INDICATION arrived at Sydney, Australia to discharge and re-stow, *inter alia*, various yachts.

30.     Prior to the ship's arrival to Sydney, the Defendants nominated WSS Australia to act as Port Agents for this ship's arrival at Sydney.

31.     As a result of the Defendants' nomination, the Defendants incurred AUD 27,649.76 (or US $29,000.02) in agency costs.

32.     The Defendants advanced AUD 24,459.98 (or US $25,654.47) in agency costs to WSS Australia, leaving a net balance owed to WSS Australia in the amount of AUD 3,189.78 (or US $3,345.46).

33.     On or about October 9, 2011, the ship HR INDICATION arrived at Newcastle, Australia.

34.     Prior to the ship's arrival to Newcastle, the Defendants nominated WSS Australia to act as Port Agents for this ship's arrival at Newcastle.

35.     Prior to the ship's arrival, WSS Australia had received communications from the Defendants confirming that funds had been remitted to WSS Australia to prefund the ship's call. The Defendants produced to WSS Australia a wire transfer confirmation dated October 7, 2011

---

[1] All currencies converted herein were done so on December 10, 2012,  pursuant to currency converter www.xe.com.

as evidence that US$50,000.00 had been paid by the Defendants to prefund this call. This wire transfer confirmation was discovered to be erroneous. *A copy of the wire transfer confirmation received from D. Cummings is attached hereto as Pl.'s Ex. "2".*

36.     Upon arrival of the ship at Newcastle, the Defendants incurred AUD 4,390.00 (or US $4,604.27) in agency costs for equipment hire and other costs.

37.     In addition, the Defendants incurred an additional AUD 50,851.27 (or US $53,329.94) for the discharge, *inter alia*, of ten (10) yachts.

38.     In total, the Defendants have incurred AUD 58,431.05 (or US $61,276.57) during the HR INDICATION's calls to Sydney and Newcastle. *A copy of WSS Australia's Final and Supplementary Disbursement Accounts for the HR INDICATION's calls in Australia and supporting documents is attached hereto as Pl.s' Ex. "3".*

39.     WSS Australia subsequently learned that the Defendants did not prefund this ship's call and thus, the port call remained completely unfunded as required by the agreement between the parties.

40.     As of the date of the filing of this Verified Complaint, the Defendants currently owe WSS Australia a total of US $63,595.00.

### *CANADA CALLS*

41.     On or about August 18, 2011, the ship SJARD arrived at New Westminster, British Columbia to load, *inter alia*, six (6) yachts.

42.     Prior to the ship's arrival to New Westminster, the Defendants nominated WSS Canada to act as Port Agents for this ship's arrival at New Westminster.

43.     As a result of the Defendants' nomination, the Defendants incurred US $46,848.54 in agency costs; however as the Defendants advanced US $47,569.99 in agency costs

to WSS Canada, this left the Defendants with a small credit in their favor for the SJARD call in the amount of US $721.45. *A copy of WSS Canada's Final Disbursement Account for the SJARD call is attached hereto as Pl.'s Ex. "4".*

44.     On or about September 22, 2011 the ship FLINTERSTAR arrived at Victoria, British Columbia, to load, *inter alia*, various yachts and cargo equipment.

45.     Prior to the ship's arrival to Victoria, the Defendants nominated WSS Canada to act as Port Agents for this ship's arrival at Victoria.

46.     As a result of the Defendants' nomination, Defendants incurred US $51,599.38 in agency costs.

47.     The Defendants advanced US $45,975.00 in agency costs to WSS Canada, leaving a net balance owed to WSS Canada in the amount of US $5,624.38. *A copy of WSS Canada's Final Disbursement Account for the FLINTERSTAR call and supporting documents is attached hereto as Pl.'s Ex. "5".*

48.     On or about October 31, 2011, the ship BERLIN TRADER arrived at Victoria, British Columbia to discharge, *inter alia*, ten (10) yachts.

49.     Prior to the ship's arrival to Victoria, the Defendants nominated WSS Canada to act as Port Agents for this ship's arrival at Victoria.

50.     As a result of the Defendants' nomination, the Defendants incurred US $28,480.49 in agency costs. *A copy of WSS Canada's Final Disbursement Account for the BERLIN TRADER call and supporting documents is attached hereto as Pl.s' Ex. "6".*

51.     On or about December 12, 2011, the ship HHL TOKYO arrived at Victoria, British Columbia, to load, *inter alia*, twelve (12) yachts and other palletized cargo.

52. Prior to the ship's arrival to Victoria, the Defendants nominated WSS Canada to act as Port Agents for this ship's arrival at Victoria.

53. As a result of the Defendants' nomination, the Defendants incurred US $108,214.22, but as the Defendants advanced only US $72,020.00 of this amount, a balance remains outstanding of US $36,194.22. *A copy of WSS Canada's Final Disbursement Account for the HHL TOKYO call and supporting documents is attached hereto as Pl.'s Ex. "7".*

54. In addition and as a result of the Defendants' nomination, the Defendants incurred an additional US $553.37 in agency costs to which the Defendants made no pre-payment. *A copy of WSS Canada's Supplementary Disbursement Account for the HHL TOKYO call and supporting document are attached hereto as Pl.'s Ex. "8".*

55. On or about February 24, 2012, the ship PALEMBANG arrived at Victoria, British Columbia to, *inter alia*, load one (1) yacht and discharge twelve (12) yachts.

56. Prior to the ship's arrival to Victoria, the Defendants nominated WSS Canada to act as Port Agents for this ship's arrival at Victoria.

57. As a result of the Defendants' nomination, the Defendants incurred US $86,292.75 in agency costs. However, as Defendants pre-funded this port call by US $102,983.80, Yacht Path has a balance in its favor of US $16,691.05. *A copy of WSS Canada's Final Disbursement Account for the PALEMBANG call and supporting documents are attached hereto as Pl.'s Ex. "9".*

58. However, as a result of the Defendants incurring additional port expenses during the PALEMBANG's call to Victoria, another US $994.22 in agency costs was incurred. *A copy of WSS Canada's Final Disbursement Account for this additional expense for the PALEMBANG call is attached hereto as Pl.'s Ex. "10".*

9

59.     On or about March 31, 2012, the ship CLIPPER NEW YORK arrived at Victoria, British Columbia to load, *inter alia*, ship equipment and yachts.

60.     Prior to the ship's arrival to Victoria, the Defendants nominated WSS Canada to act as Port Agents for this ship's arrival at Victoria.

61.     As a result of the Defendants' nomination, the Defendants incurred CAD 32,253.00 (or US $32,678.39) in agency costs. However, the Defendants advanced only CAD 31,605.24 (or US $32,023.07) in agency costs to WSS Canada, thus having incurred a balance remaining of CAD 647.76 (or US $656.31). *A copy of WSS Canada's Final Disbursement Account for the CLIPPER NEW YORK call is attached hereto as Pl.'s Ex. "11".*

62.     In addition and as a result of the Defendants' nomination, the Defendants incurred an additional CAD 80,594.63 in agency costs to which the Defendants made a pre-payment of CAD 89,235.00, leaving a balance in Defendants' favor of CAD 8,640.37 (or US $8,754.26). *A copy of WSS Canada's Final Disbursement Account for the additional expenses for the CLIPPER NEW YORK call and supporting documents is attached hereto as Pl.'s Ex. "12".*

63.     On or about April 21, 2012, the ship PAC ANTARES arrived at Victoria, British Columbia to discharge, *inter alia*, ten (10) yachts.

64.     Prior to the ship's arrival to Victoria, the Defendants nominated WSS Canada to act as Port Agents for this ship's arrival at Victoria.

65.     As a result of the Defendants' nomination, the Defendants incurred CAD 38,953.48 in agency costs. The Defendants advanced CAD 48,271.12 in agency costs to WSS Canada, thus having a balance in its favor of CAD 9,317.64 (or US $9,440.58). *A copy of WSS Canada's Final Disbursement Account for the PAC ANTARES call is attached hereto as Pl.'s Ex. "13".*

66.      However, as a result of the Master requiring funds aboard the ship, the Defendants Path incurred an additional US $3,080.00 in agency costs. As Defendants advanced only US $3,000.00 to WSS Canada for this additional service, the Defendants incurred an additional US $80.00 in agency costs. *A copy of WSS Canada's Final Disbursement Account for this additional expense for the PAC ANTARES call is attached hereto as Pl.'s Ex. "14".*

67.      On or about June 13, 2012, the ship PAC ACRUX arrived at Victoria, British Columbia to discharge, *inter alia*, thirty-six (36) yachts.

68.      Prior to the ship's arrival to Victoria, the Defendants nominated WSS Canada to act as Port Agents for this ship's arrival at Victoria.

69.      As a result of the Defendants' nomination, the Defendants incurred CAD 115,433.07 (or US $116,947.16) in agency costs. The Defendants advanced CAD 107,425.89 in agency costs to WSS Canada, leaving a balance owed of CAD 8,007.18 (or US $8,113.12). *A copy of WSS Canada's Final Disbursement Account for the PAC ACRUX call is attached hereto as Pl.'s Ex. "15".*

70.      On or about July 17, 2012, the ship SE PANTHEA arrived at Victoria, British Columbia, Canada to discharge, *inter alia*, six (6) yachts.

71.      Prior to the ship's arrival to Victoria, the Defendants nominated WSS Canada to act as Port Agents for this ship's arrival at Victoria.

72.      As a result of the Defendants' nomination, the Defendants incurred CAD 50,967.75 (or US $51,642.12) in agency costs. While the Defendants advanced CAD 41,250.84 in agency costs to WSS Canada, there is a net balance owed of CAD 9,716.91 (or US $9,845.79). *A copy of WSS Canada's Final Disbursement Account for the SE PANTHEA call is attached hereto as Pl.'s Ex. "16".*

11

73.     On or about September 4, 2012, the ship BBC CONGO arrived at Victoria, British Columbia to load, *inter alia*, yachts.

74.     Prior to the ship's arrival to Victoria, the Defendants nominated WSS Canada to act as Port Agents for the ship's arrival at Victoria.

75.     Prior to the ship's arrival, WSS Canada had received communications from the Defendants confirming that funds had been remitted to the WSS Entities to prefund the ship's call. The Defendants produced to WSS Canada a wire transfer confirmation dated September 7, 2012 as evidence that US $78,197.41 had been paid to prefund this call. *A copy of the wire transfer confirmation received by WSS Canada is attached hereto as Pl.'s Ex. "17".*

76.     After sending the wire transfer confirmation to WSS Canada, the Defendants subsequently advised WSS USA that there were no funds in place to support the wire transfer and the wire transfer confirmation produced to WSS Canada was not valid.

77.     As a result of the Defendants' nomination, the Defendants initially incurred CAD 87,275.10 (or US $88,429.26) in agency costs. On or about November 5, 2012, or two months later, the Defendants subsequently paid CAD 75,253.82 in agency costs to WSS Canada, thereby owing a net balance of CAD 12,021.28 (or US $12,180.27) for this call. *A copy of WSS Canada's Final Disbursement Account for the BBC CONGO call is attached hereto as Pl.'s Ex. "18".*

78.     However, because the pre-payment made by the Defendants was not undertaken as represented and as required by the agreement between the parties (*i.e.*, in advance of the ship's call), WSS Canada was penalized by the owners of the BBC CONGO an additional US $19,633.38 for the delay. *A copy of WSS Canada's Supplemental Disbursement Account for the BBC CONGO penalty is attached hereto as Pl.'s Ex. "19".*

79.     In a phone call with D. Cummings, he agreed that any and all related costs for the ship's delay was due to the Defendants' failure to prefund the call and would be at the Defendants' expense.

80.     As of the date of the filing of this Verified Complaint, the Defendants currently owe WSS Canada a total of US $67,113.00 + US $19,565.00 = US $86,678.00.

### HONG KONG CALLS

81.     On or about November 13, 2011, the ship SZYMANOWSKI arrived at Hong Kong to discharge, *inter alia*, yachts and load various palletized cargoes.

82.     Prior to the ship's arrival to Hong Kong, the Defendants nominated WSS Hong Kong to act as Port Agents for the ship's arrival at Hong Kong.

83.     As a result of the Defendants' nomination, the Defendants incurred US $34,744.50 in agency costs, none which were prefunded by the Defendants.

84.     On or about November 15, 2011, the ship DA HUA arrived at Hong Kong to discharge spare equipment that belonged to the Defendants.

85.     Prior to the ship's arrival to Hong Kong, the Defendants nominated WSS Hong Kong to act as Port Agents for the ship's arrival at Hong Kong and to charge any expenses from this call against the Defendants' SZYMANOWSKI account.

86.     As a result of the Defendants' nomination, the Defendants incurred US $5,211.53 in agency costs, again none of which were prefunded.

87.     On November 10, 2011, K. Cummings specifically requested that WSS Hong Kong provide its prefunding invoice for payment. This was undertaken that same day.

88. K. Cummings then requested that WSS Hong Kong attempt to negotiate the cost of a crane down further and an updated prefunding invoice was provided to K. Cummings on November 11, 2011.

89. WSS Hong Kong was led to believe by K. Cummings that prefunding had taken place prior to the arrival of the ships at Hong Kong, when in fact, it had not. *A copy of WSS Hong Kong's Final Disbursement Accounts for the SZYMANOWSKI and DA HUA calls and supporting documents are attached hereto as Pl.'s Ex. "20".*

90. As of the filing of this Verified Complaint, the Defendants currently owe WSS Hong Kong a total of US $41,855.99.

***USA CALLS***

91. On or about September 26, 2011, the ship FLINTERSTAR arrived at Tacoma, Washington to load, *inter alia*, various palletized cargoes.

92. Prior to the ship's arrival to Tacoma, the Defendants nominated WSS USA to act as Port Agents for the ship's arrival at Tacoma.

93. As a result of the Defendants' nomination, the Defendants incurred USD $615.55 in agency costs. *A copy of WSS USA's Final Disbursement Account for the FLINTERSTAR call and supporting documents is attached hereto as Pl.s' Ex. "21".*

94. On or about February 27, 2012, the ship PALEMBANG arrived at Tacoma, Washington to, *inter alia*, have items delivered to the ship.

95. Prior to the ship's arrival to Tacoma, the Defendants nominated WSS USA to act as Port Agents for the ship's arrival at Tacoma.

96. As a result of the Defendants' nomination, the Defendants incurred US $254.40 in agency costs. However, as the Defendants pre-funded this port call by US $4,260.00, the

14

Defendants have a balance in theirs favor of US $4,005.60. *A copy of WSS USA's Final Disbursement Account for the PALEMBANG call is attached hereto as Pl.'s Ex. "22".*

97.     As a result of pre-funding of calls and credit for payments made subsequently (see paragraph 105, *infra*), WSS USA has in credit in its favor in the amount of US $33,390.00.

98.     Nevertheless, the Defendants still owe WSS USA interest for the period that it was in arrears with WSS USA.

### PARTIES REACH AGREEMENT ON PARTIAL AMOUNT

99.     On January 25, 2012, due to the burgeoning debt owed by the Defendants to the various WSS Entities at the time, WSS USA wrote to the Defendants seeking payment of the various amounts owed on that date, which amounted to US $176,566.00.

100.     In answering this correspondence, D. Cummings responded that "it does appear that our balance with your Company is $176,566.00…We do accept the below amount as our responsibility and will make good on the repayment of this balance."

101.     However, despite knowing that these amounts were incurred by the Defendants, D. Cummings advised that he was unable to pay the amount owed in one lump sum and asked the WSS Entities if they would agree to a "firm" repayment schedule of the amount owed at the time, which provided for payments as follows:

[see next page]

15

| | |
|---|---|
| Payment 1: January 26, 2012 | $35,310.00 |
| Payment 2: February 2, 2012 | $35,310.00 |
| Payment 3: February 9, 2012 | $35,310.00 |
| Payment 4: February 16, 2012 | $35,310.00 |
| Payment 5: February 23, 2012 | $35,310.00 |
| TOTAL | $ 176,550.00[2] |

*Attached please find the exchanges related to the Defendants' firm repayment schedule attached hereto as Pl.s' Ex. "23".*

102.    On January 30, 2012, D. Cummings sent a letter to WSS USA confirming the repayment schedule. This repayment schedule was accepted by the WSS Entities. *Attached please find the Defendants' firm repayment schedule attached hereto as Pl.s' Ex. "24".*

103.    In good faith reliance on the Defendants' agreed repayment plan, the WSS Entities agreed to accept future agency appointments from the Defendants. These appointments include the PALEMBANG, CLIPPER NEW YORK, PAC ANTARES, PAC ACRUX, SE PANTHEA and BBC CONGO, all at Victoria, British Columbia.

104.    However, on or about January 26, 2012, the Defendants provided wire transfer documentation which shows the first payment installment was ordered to be paid to the WSS Entities on January 26, 2012. *Attached please find the wire transfer confirmation produced by the Defendants for their alleged wire transfer confirmation of payment of the first installment attached hereto as Pl.s' Ex. "25".* The WSS Entities later learned that this wire transfer

---

[2] The actual amount owed is $176,566.00. The $176,550 in the repayment schedule appears to be a misprint, given D. Cummings specifically agreed that the balance owed was $176,566.00 and that this amount was the balance owed at the time.

confirmation was useless, as it states "Pending Release" and was never actually released by the Defendants.

105.   As of the date of this Verified Complaint, the Defendants have made only two small partial payments on account to the WSS Entities—one partial payment for $10,000.00 on November 2, 2012 and the other partial payment for $20,000.00 on April 12, 2012. No other payments to the WSS Entities have been made by the Defendants.

106.   Considering all credits of payments made by the Defendants, the WSS Entities are now owed US $158,738.99, not including interest, fees and costs.

107.   The WSS entities have repeatedly demanded payment from the Defendants. Numerous e-mail correspondences were exchanged between the Cummings Brothers and the WSS Entities concerning the outstanding balances owed and to date, the Defendants have not heeded these demands for payment.

108.   Despite the Defendants' repeated promises that the balance owed would be paid, the Defendants have failed, neglected, or otherwise refused to pay the outstanding disbursements undisputedly due and owing to the WSS Entities, and interest continues to accrue on the unpaid amount.

109.   The Defendants have acted in concert and are jointly and severally liable for the causes of action set out herein.

## FIRST CAUSE OF ACTION

### BREACH OF CONTRACT AGAINST YACHT PATH INTERNATIONAL, INC., UNITY SHIPPING LINES INC., KEVIN CUMMINGS, and DENNIS J. CUMMINGS

110.   The Plaintiffs repeat and re-allege each and every allegation set forth in the sections above titled "JURISDICTION AND VENUE", "THE PARTIES" and "FACTS" as if fully set forth herein.

17

111.    At the request of the Defendants, the WSS Entities undertook to provide necessary maritime services to the Defendants' various vessels as detailed herein.

112.    In advance of doing so, the WSS Entities and Defendants orally agreed that the WSS Entities would issue invoices and be compensated for the services provided.

113.    The WSS Entities provided the agreed upon services to the Defendants' various vessel calls and provided numerous Final and Supplemental Disbursement Accounts to the Defendants at the conclusion of each ship's voyage.

114.    The Defendants have received the benefit of the WSS Entities' services and have received the invoices presented without objection.

115.    Despite repeated requests for payment by the WSS Entities and promises of payment by Defendants, the Defendants have neglected, failed and otherwise refused to pay for the services rendered by the WSS Entities, in breach of the parties' agreement.

116.    The Plaintiffs have performed all of their obligations under the contract between the parties but the Defendants have not and thus, they are in breach of contract.

117.    All conditions precedent to the bringing of this action have been performed by the Plaintiffs or have been waived by the Defendants.

118.    As a result of Defendants' willful failure to honor their obligations under the parties' agreement, the Plaintiffs have suffered damages in the amount of US $158,738.99, plus interest, fees and costs.

WHEREFORE, the Plaintiffs demand judgment against Yacht Path International, Inc., Unity Shipping Lines Inc., Kevin Cummings and Dennis J. Cummings for the above-described damages in the amount of US $158,738.99, plus interest, costs, fees and disbursements

associated with the prosecution of the First Count in this cause of action, and for any other relief which this Court may deem just and proper.

## SECOND CAUSE OF ACTION

### *ACCOUNT STATED AGAINST YACHT PATH INTERNATIONAL, INC., UNITY SHIPPING LINES INC., KEVIN CUMMINGS, and DENNIS J. CUMMINGS*

119.    The Plaintiffs repeat and re-allege each and every allegation set forth in the sections above titled "JURISDICTION AND VENUE", "THE PARTIES" and "FACTS" as if fully set forth herein.

120.    This is an action for damages in the total amount of US $158,738.99.

121.    Before institution of this action, the parties had business transactions between them as detailed above.

122.    On or about January 25, 2012, the Defendants agreed they owed to the WSS Entities a balance of $176,550.00.

123.    Shortly thereafter, the WSS Entities confirmed their agreement regarding the Defendants' offer of a repayment plan for the balance owed of $176,550.00.

124.    In good faith reliance on the Defendants' promise to pay, the WSS Entities agreed to accept further agency appointments from the Defendants.

125.    On or about June 26, 2012, WSS Canada issued its Supplemental Disbursement Account on the PALEMBANG call at Victoria of February 24, 2012 to the Defendants. *See Pl.'s Ex. 9.*

126.    The Defendants retained the second invoice on the PALEMBANG call without objection. *See Pl.'s Ex. 10.*

19

127.    On or about June 22, 2012, WSS Canada issued its Final Disbursement Account on the CLIPPER NEW YORK call at Victoria of March 31, 2012 to the Defendants. *See Pl.'s Ex. 11*.

128.    The Defendants retained the invoice on the CLIPPER NEW YORK call without objection.

129.    The Defendants retained the second invoice on the CLIPPER NEW YORK call without objection. *See Pl.'s Ex. 12.*

130.    On or about August 13, 2012, WSS Canada issued its Final Disbursement Account on the PAC ANTARES call at Victoria of April 21, 2012 to the Defendants. *See Pl.'s Ex. 13*.

131.    The Defendants retained the invoice on the PAC ANTARES call without objection.

132.    In addition, the Defendants retained the second invoice on PAC ANTARES call without objection. *See Pl.'s Ex. 14.*

133.    On or about September 24, 2012, WSS Canada issued its Final Disbursement Account on the PAC ACRUX call at Victoria of June 13, 2012 to the Defendants. *See Pl.'s Ex. 15*.

134.    The Defendants retained the invoice on the PAC ACRUX call without objection.

135.    On or about October 29, 2012, WSS Canada issued its Final Disbursement Account on the SE PANTHEA call at Victoria of July 17, 2012 to the Defendants. *See Pl.'s Ex. 16*.

136.    The Defendants retained the invoice on the SE PANTHEA call without objection.

137.   On or about November 5, 2012, WSS Canada issued its Final Disbursement Account on the BBC CONGO call at Victoria of September 4, 2012 to the Defendants. *See Pl.'s Ex. 18*.

138.   The Defendants retained the invoice on the BBC CONGO call without objection.

139.   On or about November 5, 2012, WSS Canada issued its original invoice for the penalty assessed for the BBC CONGO call at Victoria of September 4, 2012 to the Defendants. *See Pl.'s Ex. 19*.

140.   The Defendants retained the second invoice on the BBC CONGO call without objection and in fact, confirmed to WSS USA that it was responsible for the penalty assessed due to its failure to prefund the call timely.

141.   The Defendants retained the various invoices summarized herein and received from the WSS Entities without objection and repeatedly promised to make payments to fulfill their obligations to settle the account in full.

142.   More than a reasonable time has elapsed.

143.   Accordingly, the WSS Entities are entitled to judgment for the outstanding amount of US $158,738.99, plus interest from January 26, 2012, the date when the first payment under the repayment schedule was due.

WHEREFORE, Plaintiffs demand judgment against Yacht Path International, Inc., Unity Shipping Lines Inc., Kevin Cummings and Dennis J. Cummings for the above-described damages in the amount of US $158,738.99, plus interest, costs, fees and disbursements associated with the prosecution of the Second Count in this cause of action, and for any other relief which this Court may deem just and proper.

## THIRD CAUSE OF ACTION

### *OPEN ACCOUNT AGAINST YACHT PATH INTERNATIONAL, INC., UNITY SHIPPING LINES INC., KEVIN CUMMINGS, and DENNIS J. CUMMINGS*

144.    The Plaintiffs repeat and re-allege each and every allegation set forth in the sections above titled "JURISDICTION AND VENUE", "THE PARTIES" and "FACTS" as if fully set forth herein.

145.    The WSS Entities sue Defendants for an open account.

146.    This is an action for damages in the total amount of US $158,738.99.

147.    The Defendants owe the Plaintiffs US $158,738.99, plus interest from January 26, 2012.

148.    The section "FACTS" herein itemizes all amounts due and is further supported by Exhibits 1, 3, 5, 6, 7, 8, 10, 11, 15, 16, 18, 19, 20 and 24 attached hereto.

WHEREFORE, Plaintiffs demand judgment against Yacht Path International, Inc., Unity Shipping Lines Inc., Kevin Cummings and Dennis J. Cummings for the above-described damages in the amount of US $158,738.99, plus interest, costs, fees and disbursements associated with the prosecution of the Third Count in this cause of action, and for any other relief which this Court may deem just and proper.

## FOURTH CAUSE OF ACTION

### *UNJUST ENRICHMENT/QUANTUM MERUIT AGAINST YACHT PATH INTERNATIONAL, INC., UNITY SHIPPING LINES INC., KEVIN CUMMINGS, and DENNIS J. CUMMINGS*

149.    The Plaintiffs repeat and re-allege each and every allegation set forth in the sections above titled "JURISDICTION AND VENUE", "THE PARTIES" and "FACTS" as if fully set forth herein.

150. At the request of Defendants, the various WSS Entities undertook to provide necessary maritime services to the Defendants during the various ship calls to Australia, Canada, Hong Kong and the United States.

151. Despite demands for payment for its services (and Defendants' repeated promises that payment would be forthcoming), an outstanding balance of US $158,738.99, not including interest, remains due and owing to the Plaintiffs.

152. The Defendants have inequitably benefited from their neglect, failure and/or refusal to pay the Plaintiffs US $158,738.99 for the services the WSS Entities provided at the request of, and for the benefit of, the Defendants.

153. The Defendants have unjustly received and retained the benefit of the services rendered by the WSS Entities.

154. Equity and good conscience require the Defendants to the WSS Entities damages in the amount of US $158,738.99, plus interest, which the WSS Entities have incurred and sustained for the benefit of the Defendants.

WHEREFORE, Plaintiffs demand judgment against Yacht Path International, Inc., Unity Shipping Lines Inc., Kevin Cummings and Dennis J. Cummings for the above-described damages in the amount of US $158,738.99, plus interest, costs, fees and disbursements associated with the prosecution of the Fourth Count in this cause of action, and for any other relief which this Court may deem just and proper.


[see next page]


23

## FIFTH CAUSE OF ACTION

### *NEGLIGENT MISREPRESENTATION AGAINST YACHT PATH INTERNATIONAL, INC., UNITY SHIPPING LINES INC., KEVIN CUMMINGS, and DENNIS J. CUMMINGS*

155.    The WSS Entities repeat and re-allege each and every allegation set forth in the sections above titled "JURISDICTION AND VENUE", "THE PARTIES" and "FACTS" as if fully set forth herein.

156.    On or about July 2011, the parties entered into an oral agreement for the WSS Entities to act as Port Agents for the Defendants.

157.    Pursuant to the agreement between the parties and in order to induce the WSS Entities to accept nominations from the Defendants, the Defendants made material representations to the WSS Entities that pre-payment for various ship calls had been made.

158.    At all material times hereto when the Defendants made these representations, the Defendants knew or should have known that they were not true and as such, are misrepresentations made by the Defendants to the WSS Entities which the Defendants knew and/or should have known were false and misleading and which the WSS Entities relied on to their detriment.

159.    Specifically, the Defendants would provide to the WSS Entities wire transfer confirmations that were either not released (*see Pl.'s Ex. 25*), reportedly had insufficient funds (*see Pl.'s Ex. 17*) or were simply erroneous (*see Pl.s' Ex. 2*).

160.    As a result of receiving wire transfer confirmations showing that prefunding payment had been made by the Defendants, when in fact they had not, the WSS Entities innocently agreed to continue doing business with the Defendants, which resulted in the WSS Entities fronting more expenses on behalf of the Defendants. These misleading acts perpetuated by the Defendants caused loss and other harm to the WSS Entities.

24

161.   The wire transfer confirmations produced to the WSS Entities by the Defendants were allegedly made by Yacht Path and/or the Cummings Brothers, but the confirmations state that the funds were coming from Unity's bank account, evidencing a comingling of funds between the various Defendants. *See Pl.'s Ex. 2, 17 and 25*.

162.   As a direct and proximate result of the Defendants' misrepresentations, the WSS Entities have been damaged in the amount of US $158,738.99, plus interest and possible other damages to be determined through discovery.

163.   At all material times hereto, the Defendants knew and/or should have known of the wrongfulness of their conduct and/or knew or should have known that there was a high probability that the WSS Entities would suffer injury or damages and the Defendants knew and/or should have known that they made the misrepresentations that give rise to this suit for negligent misrepresentation, which resulted in the WSS suffering damages as set forth above.

164.   The WSS Entities justifiably relied on the statements made by the Defendants in stating that the pre-funding of the calls had taken place when in fact, prepayment had not taken place, as the Defendants provided wire transfer confirmations confirming this "fact".

165.   Because erroneous wire transfer confirmations were provided negligently by the Cummings Brothers, using Yacht Path and/or Unity for such purposes, D. Cummings and K. Cummings are jointly and severally personally responsible for the damages caused by Yacht Path and/or Unity for failure to pay the outstanding amounts owed by Yacht Path.

166.   D. Cummings and/or K. Cummings so dominated and controlled Yacht Path and/or Unity to such an extent as described herein that the entities' independent existence was in fact non-existent and D. Cummings and/or K. Cummings were/was in fact the alter-ego of Yacht Path and Unity.

WHEREFORE, Plaintiffs demand judgment against Yacht Path International, Inc., Unity Shipping Lines Inc., Kevin Cummings and Dennis J. Cummings for the above-described damages in the amount of US $158,738.99, plus interest, costs, fees and disbursements associated with the prosecution of the Fifth Count in this cause of action, and for any other relief which this Court may deem just and proper.

Dated: Coral Gables, Florida
       January 14, 2013

By: _____

Michelle Otero Valdés
Florida Bar No. 14990
CHALOS & CO, P.C.
141 Almeria Avenue
Coral Gables, FL 33134
Tel: (305) 377-3700
Fax: (866) 702-4577
Email: mov@chaloslaw.com
Attorneys for Plaintiffs, WSS Entities

## VERIFICATION

Pursuant to 28 U.S.C. §1746, Jeffrey Shebitz, declares under the penalty of perjury:

1.       I am and was, at all material times here, the Credit Manager for Wilhelmsen Ship Service, Inc. in Houston, Texas, one of the Plaintiffs in the above-titled action.

2.       I am an authorized officer of Wilhelmsen Ship Service, Inc. and I attest that I have the express authorization of all other Plaintiffs to the above-titled action to complete and sign this verification on their behalf and on behalf of Wilhelmsen Ship Service, Inc.

3.       I have read the foregoing Verified Complaint and know the contents thereof.

4.       I believe the matters contained within said Verified Complaint to be true based on documents and information obtained from the employees and representatives of the Plaintiffs through their various offices.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Houston, Texas
        January 14th, 2013

By:    _____
       Jeffrey Shebitz
       Credit Manager WSS Customer Services Area
       NAM/CAM